IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CORNELIUS WYATT,                    §
TDCJ #631802,                       §
              Plaintiff,            §
                                    §
v.                                  §          CIVIL ACTION NO. H-06-1343
                                    §
OFFICER LAKE SMITH and OFFICER      §
GEORGE PAYNE,                       §
              Defendants.           §

## MEMORANDUM AND ORDER

State inmate Cornelius Wyatt filed this lawsuit under 42 U.S.C. § 1983, alleging that two prison transportation officers violated his civil rights. The defendants have filed a joint motion for summary judgment. (Doc. # 38). Wyatt has filed more than one response. (Docs. # 41, # 42, # 46). After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court **grants** the defendants' motion and **dismisses** this case for reasons that follow.

## I.     BACKGROUND

Wyatt is currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Wynne Unit in Huntsville, Texas. The defendants, Officer Lake Smith and Officer George Payne, are employed by TDCJ as transportation officers. The complaint in this case concerns an incident that occurred when Officer Smith and Officer Payne were transporting thirty-three inmates from the Darrington Unit in Rosharon, Texas, to the McConnell Unit in Beeville, Texas, on July 22, 2005.

According to the record, Officer Smith, Officer Payne, and another prison employee, identified as Officer Geneva Hill, were transporting thirty-three TDCJ inmates from the Darrington Unit to the McConnell Unit early in the morning of July 22, 2005.   At approximately 6:50 a.m., one of the tires blew out while the bus was traveling south on United States Highway 59 a few miles past El Campo, Texas, near the town of Louise.[1] Officer Smith, who was driving the bus, pulled over onto the right shoulder of Highway 59 and exited the bus along with Officer Payne to see which tire had blown out.  The officers noticed that the right inside rear tire was smoking.  Inmates began to complain that they smelled smoke inside the bus.  Officer Payne got out the phone to call for assistance and to report the incident to a supervisor.  Before he could complete the call, the officers noticed that the affected tire was on fire.

The officers did not evacuate the bus right away, but attempted instead to extinguish the fire.  Officer Smith and Officer Payne grabbed two fire extinguishers, one from the back of the bus and one from the front of the bus, and doused the smouldering rear tire until the fire appeared to go out.  As Officer Payne picked up the phone to request assistance and to report the incident, however, the tire reignited.  After Officer Smith tried unsuccessfully to extinguish the fire, which was accelerating, he instructed Officer Hill to get the inmates off the bus.

---

[1]     Photographs show that the large passenger bus was equipped with two wheel wells on each side, with what looks like a total of eight tires on two axles, four in the front and four in the back.  (Doc. # 38, Exhibit D, at 36, 49).  According to the record, it was the inside tire on the rear right-hand side of the bus that was blown out on July 22, 2005.

2

Officer Payne took charge of security outside of the bus while Officer Smith and Officer Hill began to unlock the "security cages" and remove the inmates from the bus. Thirty of the inmates on the bus were assigned to the general population, but three of them were assigned to administrative segregation, which is a higher security classification. Because of security concerns, the general population inmates were separated from the administrative segregation inmates by a locked door or gate through the middle of the bus. The security cages formed two compartments in the bus, one in the front and one in the back. The general population inmates were confined in the rear of the bus, while the administrative segregation inmates were restricted to the front of the bus.  Officer Hill removed the administrative segregation inmates from the bus first through the front compartment.  Officer Payne and Officer Hill secured these inmates.  Officer Hill then threw the keys to Officer Smith so that he could evacuate the general population inmates from the back of the bus. Officer Smith proceeded to the rear of the bus to open the rear security compartment, but the key broke in the lock and he was unable to open the door.  During this time, the general population inmates were yelling and begging to get out as smoke began to pour into the interior of bus.  Officer Smith ran to the front and opened the middle door to let them out through the front compartment of the bus.  Several inmates were hurt during this process.

Once all the inmates had exited the bus, Officer Payne conducted a "head count" to make sure that everyone was off the bus.  Officer Payne then called 911 to get help. Subsequently, Officer Payne called his supervisor.  According to the incident report, Sergeant Milligan received Officer Payne's call at 7:15 a.m., telling him that the bus was on

3

fire.  At approximately 7:20 a.m., the El Campo Fire Department arrived along with the Wharton County Sheriff's Office.  The Fire Department extinguished the bus, which was engulfed in flames.  Emergency Medical Service ("EMS") arrived shortly thereafter at 7:35 a.m. and began to take care of inmates who were reportedly hurt during the incident.  A total of eight inmates were taken to El Campo Memorial Hospital.  At some point, another bus arrived to transport the remaining inmates while other officers were dispatched to the hospital to help maintain security.

Of the eight inmates who were injured and transported to the hospital, seven were treated and released the same day.[2]  Wyatt, who was among the general population inmates confined to the back of the bus, was one of the injured inmates transported to the hospital. Wyatt suffered a second degree burn on his right arm, from the elbow to the top of his hand. The record shows that Wyatt was treated at the hospital and released the same day.  He was then taken back to the Darrington Unit, where he received a follow-up examination by TDCJ medical personnel.  Wyatt did not require any further treatment.

Wyatt, who contends that his injury could have been prevented if the officers had evacuated the inmates immediately after the tire blow out occurred, has filed suit under 42 U.S.C. § 1983, alleging that the officers' delay violated his civil rights.  Wyatt complains that

---

[2]     The record reflects that inmate Daniel Gonzalez was treated at El Campo Memorial Hospital for respiratory problems.  (Doc. # 38, Exhibit D, Inter-office Communication Dated July 22, 2005).  He was eventually transferred to the University of Texas Medical Branch John Sealy Hospital in Galveston.  Seven other inmates, including Wyatt, Derrick Turner, William Lightfoot, Larry O'Neal, Jimmy Ferguson, Darryl Stephens, and Andrew Williams, were treated and released.  (*Id.*).

Officer Smith "took too long" to pull over once the tire blew out.  (Doc. # 1, *Complaint*, at 4).  Wyatt complains further that "ten minutes" passed before Officer Smith and Officer Payne made any effort to get the inmates off the bus.  (*Id.*).  Wyatt contends that, when the rear door of the bus would not open, "[a] few more min[utes] passed" before he was let off the bus.  (*Id.*).  Wyatt claims that Officer Smith and Officer Payne endangered his life by acting with "deliberate disregard" for his personal safety.  (*Id.*).  Wyatt seeks compensatory and punitive damages for the injury that he sustained.

Officer Smith and Officer Payne have filed a motion for summary judgment, asserting the defense of qualified immunity.  (Doc. # 38).  In support, both of the defendants provide affidavits, along with an affidavit from Officer Hill,[3] and documentation from the TDCJ internal investigation of the incident.  In response, Wyatt has filed objections and a motion to admit the defendants' affidavits, as well as statements given by various inmates in connection with the incident, as "summary judgment evidence" in this case.  (Doc. # 41, # 46).  The parties' contentions are discussed below under the applicable standard of review.

## II.   <u>STANDARD OF REVIEW</u>

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole

---

[3]     Officer Hill is not named as a defendant in this lawsuit.

or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

   "A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact."  *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002).  Under this standard, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as

true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint must be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.  Of course, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law.  Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party.  *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings.  *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.").  Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove

8

the necessary facts.  *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d

89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.

1995).  Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil

Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his

burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d

192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d

265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se*

parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro*

*se* parties must still comply with the rules of procedure and make arguments capable of

withstanding summary judgment.").

## III.   <u>DISCUSSION — QUALIFIED IMMUNITY</u>

Wyatt alleges that Officer Smith and Officer Payne acted with deliberate indifference

to an excessive risk of harm on July 22, 2005, in violation of the Eighth Amendment to the

United States Constitution, which prohibits cruel and unusual punishment.  Officer Smith and

Officer Payne argue that they are entitled to qualified immunity from Wyatt's claims against

them.  Public officials acting within the scope of their authority generally are shielded from

civil liability by the doctrine of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800

(1982).  "The doctrine of qualified immunity serves to shield a government official from civil

liability for damages based upon the performance of discretionary functions."  *Cozzo v.*

*Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting

*Thompson v. Upshur Cty.,* 245 F.3d 447, 456 (5th Cir. 2001)).  "The Supreme Court has

characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, this Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004), *cert. denied*, 547 U.S. 1055 (2006). The threshold question has two parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory

allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

In this instance, Officer Smith and Officer Payne argue that Wyatt has failed to establish a violation of his constitutional rights.  The officers argue further that, even if a violation occurred, their actions were objectively reasonable under the circumstances.  At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with a determination whether the plaintiff's claim lacks merit.  Accordingly, the Court first addresses whether Wyatt has raised a genuine issue of material fact on whether Officer Smith and Officer Payne committed a constitutional violation by acting with deliberate indifference to Wyatt's safety.

### A.     Deliberate Indifference to Inmate Health or Safety

Wyatt alleges that, by taking too long to evacuate inmates from the bus once the blow out occurred, Officer Smith and Officer Payne violated his rights under the Eighth Amendment.  The Eighth Amendment prohibits the "unnecessary and wanton" infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  As such, the Eighth Amendment imposes a duty on prison officials to maintain institutional security while keeping prisoners safe from conditions that pose a substantial risk of serious harm.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994);  *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that a prisoner states a cause of action by alleging that prison officials have, with deliberate indifference, exposed him to conditions that pose an unreasonable risk of serious damage to

his future health).  Where a failure to prevent harm is at issue, the Supreme Court has recognized that not every injury suffered by a prisoner translates into constitutional liability for prison officials responsible for the victim's safety.  *See Farmer*, 511 U.S. at 834. Rather, to demonstrate an Eighth Amendment violation, an inmate must satisfy the following objective and subjective criteria: (1) the inmate must show that, objectively, he was "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the inmate must show that, subjectively, prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal citations and quotations omitted).

Wyatt, who suffered a second degree burn to his arm during his evacuation from the bus, satisfies the first criteria by demonstrating that the conditions posed a substantial risk of harm to his safety.  Accordingly, the Court turns to the subjective question of whether the officers showed deliberate indifference to the condition at issue.  To establish deliberate indifference under the Eighth Amendment standard, a prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed.  *See id.* at 837.  The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet.  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847).

12

Wyatt complains that all of the injuries sustained during the incident could have been prevented if the officers had evacuated the bus immediately after the blow out occurred, rather than attempting to put the burning tire out with fire extinguishers. Thus, he complains that the officers' delay exposed him to an excessive risk of harm. The chronology of the incident, which is summarized above and which is not disputed by Wyatt, does reflect some delay. It does not, however, demonstrate deliberate indifference on the officers' part.

According to Officer Hill, Officer Smith pulled over right away once the blow out occurred. The record reflects that, once the bus pulled over to the side of the road, Officer Smith and Officer Payne made one attempt to extinguish the blown out rear tire when the fire reignited and a second effort was made to put out the blaze. When the officers could not put out the fire and it began to spread to the bus, then the officers decided to evacuate the inmates. By Wyatt's own estimation, once the decision was made it took "ten minutes" for the officers to evacuate the inmates. (Doc. # 1, *Complaint*, at 4). There was delay in the removing the general population inmates because the higher risk administrative segregation inmates were evacuated from the bus first. There was additional delay after the key broke off in the lock to the general population security cage in the back of the bus. As a result, Officer Smith had to run around to the front of the bus and let the inmates out through the front compartment. Once all of the inmates were secured a safe distance from the bus, Officer Payne conducted a head count and then called for help.

TDCJ conducted an internal investigation into the incident. (Doc. # 38, Exhibit D, TDCJ Emergency Action Center Incident Number I-08059-07-05). The investigation

13

revealed that the fire, which was caused by the blown out tire, could not have been avoided by the officers.  (*Id.* at 5).  The report concluded that the officers "did a great job working together as a team removing the offenders in a short amount of time."  (*Id.*).  Likewise, the report concluded that all three officers "did an exceptional job securing the scene, getting the offenders off a burning bus while maintaining security."  (*Id.*).  The investigator noted that, although eight inmates were injured, the officers' "quick response in this situation [quite] possibly saved the offenders['] lives."  (*Id.* at 3).

The undisputed summary judgment evidence, which is summarized above, supports the conclusion reached in the TDCJ incident report that the inmates were removed from the bus promptly.  Wyatt does not dispute that the tire blow out occurred at 6:50 a.m. and that Officer Smith pulled off to the side of the road sometime thereafter.  Once the bus stopped, Officer Smith and Officer Payne retrieved fire extinguishers and made two attempts to put out the burning tire before deciding to evacuate the inmates.  The record does not indicate the exact length of time the officers spent trying to extinguish the fire before deciding to evacuate the inmates.  Likewise, the record does not indicate the exact length of time that it took for Officer Hill to remove the administrative segregation inmates or the exact length of time it took Officer Smith to evacuate the general population inmates.  By Wyatt's own estimate, it took Officer Smith a few minutes to let them out the front of the bus after the key broke in the lock to the back door.  Nevertheless, Wyatt does not dispute that all inmates were off the bus by no later than 7:15 a.m., which is when Officer Payne — who had already called 911 to request help — was able to contact his supervisor, Sergeant Milligan, to report

14

the incident.  The El Campo Fire Department arrived at approximately 7:20 a.m., along with the Wharton County Sheriff's Department.  By this time, the bus was engulfed in fire.  EMS personnel arrived shortly thereafter, by 7:35 a.m., to treat the injured inmates.

Wyatt, who insists that all of the injuries could have been avoided, complains that the inmates should have been removed from the bus immediately as soon as the officers observed that the blown out tire was on fire.  In support of this claim, he points to statements given by other inmates who complain that the injuries were caused by the officers' delay and their reluctance to evacuate the bus right away.[4]  (Doc. # 46, Exhibits).  To the extent that Wyatt disagrees with the officers' decision to attempt to extinguish the fire before evacuating inmates from the bus, this type of decision is committed to the officers' discretion.  Their judgment in weighing the competing demands of the emergency in this case, which included the need to evacuate prisoners and maintain security, is entitled to substantial deference.  *See Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (recognizing that, when an actual threat to

---

[4]    Wyatt alleges that one of the officers made a statement during the incident to the effect that they should let the inmates burn.  During the investigation, Officer Payne clarified that he recalled Officer Smith saying "F*** them, let them burn," when asked what to do about the "medical records and truck mail" that were on the bus.  (Doc. # 38, Exhibit D, at 17).  The record shows that the bus was destroyed as a result of the fire, along with the inmates' medical records, personal property, and mail that was left on board.  Officer Payne stated that, it is possible that if an inmate overheard Officer Smith's statement, the inmate could have thought that it was said about the inmates.  *See id*. According to Officer Payne, however, nothing was ever said about letting the inmates burn.  *See id*.  While there are conflicting accounts about what was said, the comment, if made, does not appear to have caused significant delay.  As other inmates commented in their statements, Officer Smith and Officer Hill worked diligently to evacuate the inmates.  Another commented that "Officer Smith did all he could and I thank God for him."

security emerges, deference to prison policy and security measures extends to the execution of those policies) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

Notably, the officers in this case were outnumbered by inmates by a ratio of three to one.  Wyatt does not dispute that the incident at issue, which occurred on the side of a public highway rather than inside prison walls, posed a significant security risk of escape.  While Wyatt may disagree with the officers' actions, mere disagreement about an official course of action does not demonstrate deliberate indifference under the Eighth Amendment.  *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977).  Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence, and not a constitutional violation.  *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)); *see also Wells v. Thieret*, 14 F.3d 605, 1994 WL 9782 (7th Cir. 1994) (unpublished) (holding that an inmate's challenge to the "reasonableness" of efforts taken by prison officials in response to a fire that affected a protective custody cellblock sounded in negligence, and did not satisfy the deliberate indifference standard).   As the Supreme Court has made clear, a prison official is not liable if he took reasonable steps to avert the harm.  *See Farmer*, 511 U.S. at 844. Thus, negligent exposure to a risk is not sufficient to establish a constitutional violation of the Eighth Amendment. *Id*. at 835-36.

Wyatt does not allege that the officers refused to evacuate the inmates or that they unreasonably delayed removing them from the bus with wanton disregard for their safety.

16

In that respect, Wyatt does not allege facts showing that the officers were aware of a risk of harm but simply ignored it. Rather, the evidence reflects that all three of the transportation officers, who alone were charged with transporting thirty-three inmates with differing security classifications, reacted promptly to a rapidly developing emergency situation that occurred on the side of the road where they were far from assistance. Under similar circumstances, the Fifth Circuit has found no constitutional violation. *See Popham v. Countz*, 68 F.3d 464, 1995 WL 581420 (5th Cir. 1995) (unpublished) (finding no deliberate indifference where officials acted promptly in evacuating inmates when faced with an emergency due to fire and dismissing the appeal as "frivolous"). Wyatt's allegations concerning the choices made by the officers are not sufficient to raise a genuine issue of material fact on whether the inmates were exposed to a hazardous condition with deliberate indifference. Accordingly, Wyatt fails to establish a constitutional violation of the Eighth Amendment.

### B.     Objective Reasonableness

Because Wyatt has failed to establish a constitutional violation, the Court need not proceed to the final step of the qualified immunity analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). Nevertheless, Officer Smith and Officer Payne argue that, even if a violation occurred, they are entitled to qualified immunity from suit because they acted in good faith and their conduct was objectively reasonable under the circumstances. To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the

17

defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added).  If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341 (1986).  "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, Wyatt, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them.  *See Michalik*, 422 F.3d at 262.  Wyatt does not meet that burden here.  As outlined above, the summary judgment record reflects that the officers attempted to extinguish the fire themselves and that, when those efforts were unsuccessful, the decision was made to evacuate the inmates.  The evacuation took time because of security constraints and was further hampered by a broken key.  Wyatt's allegation that the officers should not have attempted to put out the fire, but should have evacuated the inmates immediately, does not raise a genuine issue of material fact on whether the actions taken by Officer Smith and Officer Payne were unreasonable under the circumstances and is not sufficient to overcome the defendants' assertion of qualified

18

immunity in this instance.  The Court concludes, therefore, that summary judgment on the

defendants' assertion of qualified immunity is warranted.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      The defendants' motion for summary judgment (Doc. # 38) is **GRANTED**.

2.      To the extent that it is not moot, the plaintiff's motion to admit the defendants' affidavits and statements by various inmates as summary judgment evidence (Doc. # 41) is **GRANTED**.

3.      The complaint is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  March 12th,  2008.


Nancy F. Atlas
United States District Judge

19